IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01637-GPG-KAS

ROBERT A. HUNTSMAN, and
LILY M. HUNTSMAN,

      Plaintiffs,

v.

LIBERTY MUTUAL AUTO AND HOME SERVICES LLC,
RELX INC.,
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,
AUTO-OWNERS INSURANCE,
NATIONWIDE INSURANCE COMPANY OF AMERICA,
ENCOMPASS INSURANCE COMPANY,
TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,
AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I., and
FOREMOST PROPERTY AND CASUALTY INSURANCE COMPANY,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendant Liberty Mutual Auto and Home

Services LLC ("Liberty Mutual"), Travelers Property Casualty Insurance Company

("Travelers"), Progressive Casualty Insurance Company ("Progressive")[1], Auto-Owners

Insurance ("Auto-Owners"), RELX Inc. ("RELX"), Allstate Fire and Casualty Insurance

Company ("Allstate"), American Family Home Insurance Company[2], and Encompass

---

[1] Progressive was terminated from this action on July 17, 2025, [#156], by Stipulation of Dismissal [#155].

[2] The District Juge terminated American Family Home Insurance Company as a party, following Plaintiffs' filing of a "Stipulation of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(ii) of American Family Home Insurance Company" [#100]. *See* October 28, 2024 Text Entry Order.

Insurance Company's ("Encompass") **Consolidated Motion to Dismiss the Complaint**
[#91] (the "Consolidated Motion").  Also before the Court is **Certain Defendants' Motion**
**to Dismiss for Failure to State a Claim** [#92] (the "Nominal Defendants' Motion"), and
Defendant Nationwide Insurance Company of America's ("Nationwide") **Motion to**
**Dismiss and Notice of Joinder to ECF No. 91 and ECF No. 92** [#95] ("Nationwide's
Motion"). Defendant Foremost Property and Casualty Insurance Company ("Foremost")
joined in the Consolidated Motion [#91] and the Nominal Defendants' Motion [#92]. *See*
[#154]. Plaintiffs filed Responses to the Motions to Dismiss [#104, #105, #108] and the
Defendants filed Replies [#116, #117]. The Court has reviewed the briefs, the entire case
file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that
the Motions [#91, #92, #95] be **GRANTED.**

## I. Background

Plaintiffs, proceeding pro se[3], have asserted claims against a litany of parties
arising from those parties' purportedly unlawful data-sharing practices. Plaintiffs
purchased a home in 2017 in Aurora, Colorado. *Am. Compl.* [#147][4] at 8, ¶ 29. They
allege they insured their home through Geico Casualty Company, which partnered with

---

[3] The Court is mindful that Plaintiffs proceed pro se and the Court thus affords their papers and
filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court cannot
and does not act as their advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and
applies the same procedural rules and substantive law to Plaintiffs as to a represented
party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2008); *Dodson v. Bd.
of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1235-36 (D. Colo. 2012).

[4] Plaintiffs filed the Second Amended Complaint [#147] pursuant to the Court's June 8, 2025
Minute Order [#143] granting Plaintiffs' Unopposed Motion for Leave to File Joinder to Add Parties
Previously Misidentified [#129]. As required by the June 8, 2025 Minute Order [#143], the Second
Amended Complaint simply adds American Family Mutual Insurance Company, S.I. and
Foremost Property and Casualty Insurance Company as parties but does not include any other
amendments. Therefore, the Second Amended Complaint's filing did not moot the Motions to
Dismiss [#104, #105, #108].

Liberty Mutual for claims processing. *Id.* On two separate occasions, Plaintiffs filed claims under the policy relating to fire damage and hail damage. *Id.* at 9, ¶ 30. Plaintiffs allege that an inspector with Defendant Liberty Mutual filed a third claim on their behalf for animal damage. *Id.* ¶ 32.

In April 2024, Defendant Liberty Mutual notified Plaintiffs that it would not be renewing their homeowner's insurance, which was set to expire on June 26, 2024. *Id.* at 11, ¶ 38. Plaintiffs were then informed by their mortgagor that the failure to obtain new insurance would violate the terms of their mortgage, posing a risk of foreclosure. *Id.* ¶ 39. Plaintiffs claim that they "immediately sought replacement insurance from other Colorado insurers" but ultimately "were denied coverage due to claim history reported by Liberty Mutual" and were not offered coverage at an increased rate. *Id.* ¶ 38. Plaintiffs do not identify from what insurance companies they sought coverage, or which companies denied them coverage, apart from Liberty Mutual's decision not to renew their prior policy. *See generally Am. Compl.* [#147].

Plaintiffs, seemingly frustrated by their inability to obtain homeowners insurance, have concocted a theory which they believe entitles them to relief. Plaintiffs allege the defendant insurance companies are akin to a "cartel" and they act in concert to deny coverage to homeowners in an unlawful manner. *Id.* at 13, ¶ 46. Specifically, Plaintiffs explain that the defendant insurance companies collectively use, for improper purposes, the Comprehensive Loss Underwriting Exchange ("CLUE"), which is a database operated by Defendant RELX[5]. *Id.* In the CLUE database, RELX compiles consumer data provided to it by insurance companies, which includes historical loss data of past claims, to assist

---

[5] According to the Complaint, RELX is also known as LexisNexis Risk Solutions, Inc. *See Second Am. Compl.* [#147] at 3, ¶ 7.

in the underwriting process. *See Consolidated Motion* [#91] at 15[6]. Plaintiffs contend that their historical claims data is private and sensitive information and is only being shared by RELX to insurance companies so that "the [insurance] industry can collude and collectively inflate premiums and decline insurance solely on the basis of" a consumer's claim history. *Am. Compl.* [#147] at 10, ¶ 33. Plaintiffs believe that the CLUE database is collectively used "to punish and intimidate [customers] for filing contractually permissible claims" and that this behavior "limit[s] the supply of home insurance products" for consumers. *Id.* at 10-11, ¶¶ 36-37. They contend this practice "has a chilling effect on homeowners" and discourages homeowners from filing colorable claims. *Id.* at 12, ¶ 41.

Based on that theory, Plaintiffs spawned this attack on RELX and numerous insurance companies. Plaintiffs lodge several claims: (1) violation of Section 2 of the Sherman Antitrust Act; (2) violation of Section 4 of the Clayton Antitrust Act; (3) violation of the Colorado Antitrust Act; (4) negligence against Defendant Liberty Mutual; (5) "insurance bad faith and breach of common law fiduciary duty" against Defendant Liberty Mutual; (6) "disparagement for treating a filed property loss claim like a non-payment of an obligation" asserted against Defendants Liberty Mutual and RELX; (7) unjust enrichment against Defendant RELX; and (8) tortious interference with prospective business advantage against Defendants Liberty Mutual and RELX. *Id.* at 13-21, ¶¶ 45-71. Plaintiffs request the following relief: (1) injunctive relief to remove their data from CLUE; (2) declarations that (a) the practice of collecting and disseminating property damage data under the FCRA is unlawful and (b) property claims data is confidential and requires written consent of the homeowner; (3) monetary damages in the amount of

---

[6] Page number citations refer to the numbering used by the Court's CM/ECF docketing system at the top of each page, not to the document's original page numbering.

$650,000.00; (4) treble damages; and (5) costs and attorneys fees. *Id.* at 15, ¶¶ 51(1)-(6).

The parties to this lawsuit are ever-changing. For clarity, the remaining defendants are Liberty Mutual, Allstate, Auto-Owners, Nationwide, Encompass, Travelers, American Family Mutual Insurance Company, S.I. ("American Family")[7], and Foremost ("Foremost" together with Allstate, Auto-Owners, Nationwide, Encompass, Travelers, and American Family are hereinafter referred to as the "Insurer Defendants"), and RELX (the Insurer Defendants together with RELX are referred to herein as the "Defendants").

The remaining parties to the Consolidated Motion [#91] are Liberty Mutual, Travelers, Allstate, Auto-Owners, RELX, and Encompass. Nationwide and Foremost joined the Consolidated Motion [#91]. *See* [#118, #154]. The remaining parties to the Nominal Defendants' Motion [#92] are Allstate, Auto-Owners, Encompass, and Travelers. *See Motion to Dismiss* [#92]. Nationwide and Foremost also joined the Nominal Defendants' Motion [#92]. *See* [#95, #154].

## II. Legal Standards

### A.    Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). However,

---

[7] According to the docket, process was served on American Family Mutual Insurance Company, S.I. on June 26, 2026, and its answer or other response to the Second Amended Complaint [#147] was therefore due on July 17, 2025. *See Returned Executed Summons* [#148]; *see also* FED. R. CIV. P. 12(a)(1)(A)(i) (setting response deadline following service of process). American Family has not answered or otherwise responded to the operative complaint.

conclusory allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Rather, "[a] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Iqbal*, 556 U.S. at 679).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017).

Furthermore, because "[p]roceeding to antitrust discovery can be expensive," courts must "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed" in these cases. *Twombly*, 550 U.S. at 558 (internal quotations and citation omitted). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

B.    **Rule 8**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8(a) does not require plaintiffs to set forth detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. At minimum, Rule 8(a) requires that a plaintiff "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"—that is, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief[.]" *Twombly*, 550 U.S. at 555, n.3.

### III. Analysis

A.    **Claims Asserted Against the Nominal Defendants**

The Court will first address the pleading deficiency issues raised in the Nominal Defendants' Motion [#92]. The remaining Nominal Defendants (Allstate, Auto-Owners, Encompass, Travelers, Nationwide, and Foremost) argue that Plaintiffs' antitrust claims against them should be dismissed because Plaintiffs "do not come close to satisfying Rule 8's pleading standards[.]" *Motion* [#92] at 4; *see Notices of Joinder* [#95, #154]. The Nominal Defendants contend that Plaintiffs fail to allege specific facts as to what each Nominal Defendant did. *Id.* This, they argue, constitutes impermissible group pleading that violates Rule 8. *Id.* The Court agrees.

As the Nominal Defendants argue, the Amended Complaint's [#147] only specific reference to *any* of them is in the caption and the listing of the parties. *See id.* Plaintiffs wholly fail to discuss any of the Nominal Defendants in the Amended Complaint [#147]. Absent from Plaintiffs' Amended Complaint [#147] are any allegations that (1) Plaintiffs met with any of the Nominal Defendants; (2) the Nominal Defendants denied Plaintiffs

7

insurance coverage; (3) the Nominal Defendants submitted Plaintiffs' claims loss data to RELX; or (4) the Nominal Defendants have an agreement with RELX to provide consumer data. *See generally Am. Compl.* [#147]; *Motion* [#92] at 5-6. In their response briefing, Plaintiffs admit that "relying on the claim caption for party identification in the allegations may not be the best practice," however, they chalk their group pleading up to a mere "style issue." *See Response* [#105] at 3. Plaintiffs attempt to assure the Court such issues can be resolved via amendment and that "perhaps replicating paragraphs for each insurance defendant" by name will suffice. *Id.* at 2-3. However, as the *Twombly* Court recognized, courts should be particularly critical of complaints that "mention[] no specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. at 565, n.10. Here, Plaintiffs' allegations are bare and unspecific. They allege:

- "[T]hese insurance company defendants specifically, routinely and collectively gather private client property loss data, and then submit it to an industrywide database, who then collusively share it with their competitors for the express purpose of denying homeowners new or renewed home insurance who file have filed property loss claims in the past."

- "Plaintiff[s'] immediately sought replacement insurance from other Colorado insurers and in every case were denied coverage due to claim history reported by Liberty Mutual, and as of the writing, not even offered coverage at an increased rate for the residential home. The Plaintiffs' property damage claim history in each case was cited as the reason for denying coverage."

- "All defendant companies, by collectively maintaining and using a common, shared database (or databases) containing claim filing data from their so-called competitors, have formed an informal, unlawful cartel that spans state boundaries and allows these defendants, individually and collectively, to intimidate consumers of insurance products not to file righteous property claims."

*Am. Compl.* [#147] at ¶¶ 21, 38, 46.

This type of pleading conduct is exactly what the Tenth Circuit admonished in *Robbins*. There, the plaintiff asserted 42 U.S.C. § 1983 claims against the defendants. *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008). In reviewing the sufficiency of the pleadings, the court noted that the plaintiffs' "use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom" rendered it impossible for the defendants to ascertain what particular unconstitutional acts they were alleged to have committed. *Id.* at 1250. Judges in this District have criticized similar complaints. In *Grays v. TSG Auto*, the complaint contained allegations that referred to the defendants collectively without delineating facts specific to one newly added defendant. No. 1:18-cv-01762-SKC, 2019 WL 13196153, at *3 (D. Colo. June 21, 2019). In essence, the plaintiff "generally grouped the [d]efendants, old and new, together under the moniker 'Defendants'" without adding allegations specific to the new defendant. *Id.* The plaintiff did not specify what the new defendant did to her, when it did it, or how its actions harmed her. *Id.* The court recognized that "[t]his type of group pleading—which fails to differentiate between the [d]efendants and their respective acts or omissions—violates Rule 8." *Id.*

Moreover, a "naked assertion of conspiracy in a [Sherman Act] complaint . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility[.]" *Twombly*, 550 U.S. at 557. This is especially true when a party "asserts complex claims against multiple defendants," because "it is 'particularly important' to 'make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations.'" *Bristow Endeavor*

*Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (quoting *Kan. Penn Gambling, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (emphasis omitted)).

Viewing the allegations in the light most favorable to Plaintiffs, the Court cannot conclude that Plaintiffs have "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiffs' allegations of antitrust violations against the Nominal Defendants, when construed liberally, do not enable the Court to draw a reasonable inference that the Nominal Defendants violated Plaintiffs' statutory or constitutional rights. Plaintiffs appear to lodge unspecified and generalized allegations against the Nominal Defendants solely because of their status as insurance companies rather than based upon their own specific conduct. Ultimately, Plaintiffs' Amended Complaint [#147] fails to "isolate the allegedly unconstitutional acts of each defendant," and thus, fails to "provide adequate notice as to the nature of the claims against each." *Robbins*, 519 F.3d at 1250.

Therefore, the Court recommends that the Nominal Defendants' Motion [#92] be **granted** and that Plaintiffs' Amended Complaint [#147] be **dismissed without prejudice** for failure to comply with the pleading requirements of Rule 8. It is further **recommended** that within fourteen (14) days of the District Judge's adjudication of the Motions to Dismiss [#91, #92, #95], that Plaintiffs file an amended complaint that complies with the Rule.

**B.    Plaintiffs Lack Antitrust Standing**

Plaintiffs bring antitrust claims against all Defendants under the Section 2 of the Sherman Act, 15 U.S.C. § 2; Section 4 of the Clayton Act, 15 U.S.C. § 15; and the Colorado Antitrust Act, Colo. Rev. Stat. § 6-4-101, et seq.[8] *See Am. Compl.* [#147] at 13-16. To pursue antitrust claims, a plaintiff must establish Article III standing[9] and antitrust standing. *See GDHI Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189, 1201 (D. Colo. 2019); *see also Am. Cricket Premier League, LLC v. USA Cricket*, 445 F. Supp. 3d 1167, 1174 (D. Colo. 2020) (noting that Article III standing and antitrust standing are separate inquiries, with the latter being "more rigorous than that of the Constitution") (internal quotation marks omitted) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006)). Antitrust standing must be determined at the outset, and challenges to antitrust standing are properly brought under Rule 12(b)(6). *See GDHI Mktg. LLC*, 416 F. Supp. 3d at 1201. Plaintiffs bear the burden of establishing standing. *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1267 (10th Cir. 2006). Defendants correctly argue that Plaintiffs' antitrust claims fail because they have not adequately alleged that they possess the requisite antitrust standing. *See Consolidated Motion* [#91] at 18-19; *Nationwide's Motion* [#95] at 2-3.

---

[8] The Colorado Antitrust Act is the state law counterpart to the Sherman Act. *See Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-cv-3012-WJM-NYW, 2016 WL 8416760, at *4 n.3 (D. Colo. July 13, 2016). Courts analyze the federal and state antitrust claims together "[b]ecause federal antitrust law principles apply to both[.]" *Id.* (citing *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1220 n.1 (10th Cir. 2009)).

[9] The Court questions Plaintiffs' constitutional standing. Defendants do not raise the issue of constitutional standing in their motions to dismiss [#91, #92, #95], nor do they attempt to facially or factually challenge Plaintiffs' Article III standing. However, the Court notes that Geico Insurance Agency, LLC and Stillwater Property Casualty and Insurance Company—now dismissed parties to this action—raised constitutional standing concerns in their respective motions to dismiss. *See* [#93, #96].

The more rigorous "antitrust standing requires a private plaintiff to show '(1) an antitrust injury; and (2) a direct causal connection between that injury and a defendant's violation of the antitrust laws.'" *Tal*, 453 F.3d at 1253 (quoting *Ashley Creek Phosphate Co. v. Chevron USA, Inc.,* 315 F.3d 1245, 1254 (10th Cir. 2003)) (internal quotations omitted); *see also Atl. Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334 (1990). As the Tenth Circuit has recognized, "[a]ntitrust injury and antitrust standing are overlapping concepts; '[s]tanding cannot be established without an antitrust injury, but the existence of an antitrust injury does not automatically confer standing.'" *Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1124 (10th Cir. 2005) (quoting *Sharp v. United Airlines, Inc.*, 967 F.2d 404, 406 (10th Cir. 1992)).

An antitrust injury is defined as one which "the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). To plead an antitrust injury, a plaintiff "must allege a business or property injury . . . as defined by the Sherman Act." *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.,* 131 F.3d 874, 882 (10th Cir. 1997) (citation and quotation omitted). The existence of an actionable injury must be examined "from the consumer's viewpoint"; thus, Plaintiffs must plausibly allege that Defendants' conduct "affected the prices, quantity or quality of goods or services, not just [the plaintiff's] own welfare." *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 638 (10th Cir. 2008) (quoting *Mathews v. Lancaster Gen. Hosp.,* 87 F.3d 624, 641 (3d Cir. 1996)). Ultimately, "the injury to the plaintiff and the injury to competition must be one and the same." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint. Inc.*, 863 F. Supp. 2d 1066, 1090 (D. Colo. 2012). Put differently, the alleged injury must harm competition generally,

because antitrust laws protect the competitive process, not general notions of fair dealing. *See Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1225 (10th Cir. 2009). Indeed, "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 534 (1983) (quoting *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 263 n.14 (1972)).

The Court finds that Plaintiffs have not adequately alleged an antitrust injury sufficient to establish antitrust standing. Plaintiffs allege that all Defendants created an "unlawful cartel" by collectively using CLUE to share historical claims data, and that the Insurer Defendants use this shared data, as compiled by Defendant RELX, to deny future coverage, regardless of whether an insured's prior claims are legitimate. *See Am. Compl.* [#147] at 13, ¶ 46. Plaintiffs further allege that they were unable to obtain homeowner's insurance because of this conduct and that their inability to do so will cause them to violate the terms of their mortgage, leading to foreclosure. *Id.* at 11, ¶ 39.

These allegations are not the kind that antitrust laws were intended to prevent. Specifically, Plaintiffs do not describe an injury to competition; rather, they allege only injuries to themselves. Plaintiffs base their antitrust claims on a personal injury "causally linked" to an asserted antitrust violation at their peril. *Brunswick Corp.*, 429 U.S. at 489. Ultimately, Plaintiffs have failed to show harm to the competition in the insurance market. At best, Plaintiffs complain of the "general notions of fair dealing," which is insufficient to establish antitrust standing. *Four Corners Nephrology Assocs, P.C.*, 582 F.3d at 1225 ("[I]t is the 'protection of competition or prevention of monopoly[ ] which is

plainly the concern of the Sherman Act,' not the vindication of general 'notions of fair dealing,' which are the subject of many other laws at both the federal and state level."); *see also Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."). Allowing Plaintiffs' claims to move forward would run counter to congressional intent in enacting the antitrust laws. *See Associated Gen. Contractors*, 459 U.S. at 534.

Moreover, Plaintiffs acknowledge their lack of antitrust standing. In their response briefing, Plaintiffs admit that their alleged injury is not actionable and that any antitrust injury and direct casual connection "were not well pled." *Response* [#108] at 2; *Response* [#104] at 10 ("Plaintiffs are persuaded that their alleged injury is not actionable[.]"). Having failed to sufficiently allege an injury "of the type the antitrust laws were intended to prevent," *see Brunswick Corp.,* 429 U.S. at 488, Plaintiffs lack standing to bring their antitrust claims.

Therefore, the Court **recommends** that the Consolidated Motion [#91] and Nationwide's Motion [#95] be **granted** and that Plaintiffs' federal and state antitrust claims, i.e., Claims One through Three, be **dismissed** with respect to all Defendants for failure to adequately plead facts sufficient to establish antitrust standing.

## C.    The McCarran-Ferguson Act Nonetheless Bars Plaintiffs' Antitrust Claims

Assuming, *arguendo*, that Plaintiffs established antitrust standing, their antitrust claims are nonetheless barred by the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015. The McCarran-Ferguson Act states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of

regulating the business of insurance . . . unless such Act specifically relates to the business of insurance[.]" 15 U.S.C. § 1012(b). It "exempts the 'business of insurance' from the antitrust provisions of the Sherman and Clayton Acts if such be regulated by the state wherein the alleged violations occurred." *Commander Leasing Co. v. Transamerica Title Ins. Co*., 477 F.2d 77, 83 (10th Cir. 1973). Congress passed the McCarran-Ferguson Act with the intent of allowing "insurers to share information relating to risk underwriting and loss experience without exposure to federal antitrust liability and to preserve for the states the power to regulate the insurance industry." *Gilchrist v. State Farm Mut. Auto. Ins. Co*., 390 F.3d 1327, 1330 (11th Cir. 2004).

Put differently, the McCarran-Ferguson Act provides a statutory antitrust exemption for activities that (1) constitute the "business of insurance," (2) are regulated pursuant to state law, and (3) do not constitute acts of "boycott, coercion or intimidation." *See generally Grp. Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205 (1979); *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1098 (10th Cir. 1999). If the McCarran-Ferguson Act applies, the Court lacks jurisdiction over Plaintiffs' claims. *See Gilchrist*, 390 F.3d at 1330.

### 1.    The Challenged Activity is Part of the "Business of Insurance"

The Supreme Court has articulated three criteria to determine whether a particular practice is part of the "business of insurance." These are: (1) "whether the practice has the effect of transferring or spreading a policyholder's risk"; (2) "whether the practice is an integral part of the policy relationship between the insurer and the insured"; and (3) "whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982). That Court has recognized that "[r]eferences to the meaning of the 'business of insurance' in the legislative history of the McCarran-

Ferguson Act strongly suggest that Congress understood the business of insurance to be the underwriting and spreading of risk." *Royal Drug Co.*, 440 U.S. at 220-21. Importantly, the requirements under the "business of insurance" clause are not tested based on the mere identity of the defendant as an insurance company but rather by whether the activity at issue constitutes the business of insurance. *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 781-82 (1993).

The practice Plaintiffs challenge is the Insurer Defendants' shared use of the CLUE database, as compiled by Defendant RELX, to view historical claims data for purposes of denying or approving homeowner insurance applications. This practice, however, is *critical* to transferring or spreading a policyholder's risk because it enables insurers to assess potential risks before issuing policies. *See Royal Drug*, 440 U.S. at 221 (recognizing that "it is very difficult to underwrite risks in an informed and responsible way without intra-industry cooperation[.]"). As Defendants contend, "[t]he exchange and use of insurance loss data is at the core of the business of insurance." *See Consolidated Motion* [#91] at 32. Indeed, Plaintiffs acknowledge this common practice in their response briefing, and admit that "it is exceedingly clear that, as a matter of law, insurance companies may properly collect and [share] anonymous data[.]" *Response* [#104] at 10. The first *Pireno* factor is satisfied.

Next, the challenged practice is integral to the insured-insurer relationship because it is used to determine whether a policy should be issued. *See Am. Fam. Mut. Ins. Co. v. Hollander*, No. C08-1039, 2009 WL 535990, at *5 (N.D. Iowa Mar. 3, 2009) (explaining that "insurance companies may contract with [CLUE] to access prior claim information for purposes of underwriting and rating."). By sharing historical claims data, insurers are able

to assess potential risks and set appropriate premiums, which, in turn, are used to establish the insured-insurer relationship, i.e, issuing the policy. The second *Pireno* factor is therefore met.

Finally, the practice of sharing historical claims data through the CLUE database is limited by Colorado law to entities within the insurance industry, such as the Insurer Defendants. *See* COLO. REV. STAT. § 10-4-110.8. This similarly extends to Defendant RELX, the only non-insurer defendant in this case. Though RELX is not an entity in the insurance industry, it is "sufficiently related" to the industry to be considered an entity within the insurance industry because its sole function is to gather and compile data into CLUE for an insurer's use. *See State of Md. v. Blue Cross & Blue Shield Ass'n*, 620 F. Supp. 907, 919 (D. Md. 1985). This is further supported by Colorado statute, which allows insurers to provide claims information to "an entity that compiles . . . personal claim or loss experience shared by insurers for underwriting or rating purposes." COLO. REV. STAT. § 10-4-110.8(2). Finding that Defendant RELX is not sufficiently related to the insurance industry would run contrary to the spirit of the McCarran-Ferguson Act, which is aimed at protecting intra-industry cooperation. *See Royal Drug Co*., 440 U.S. at 221. The third *Pireno* factor is satisfied.

In considering the three *Pireno* factors, the Court finds that the challenged practice constitutes "the business of insurance."

### 2.    The Challenged Activity is Regulated by State Law

Colorado's insurance industry, and Plaintiffs complained-of conduct, are heavily regulated. First, the use of claim and loss information is expressly permitted pursuant to COLO. REV. STAT. § 10-4-110.7 (discussing an insurer's use of claims history during insurance application process). Second, the sharing of claim history with third parties,

such as Defendant RELX, for purposes of compiling that information for underwriting purposes is also permitted under state law. *Id.* § 10-4-110.8. The statute specifically provides that "[a]n insurer may only provide information regarding claims to an entity that compiles or monitors personal claim or loss experience shared by insurers for underwriting or rating purposes." *Id.* § 10-4-110.8(2). This appears to cover the Insurer Defendants' alleged act of sharing historical claims loss data to Defendant RELX, for compilation into the CLUE database for shared use amongst insurers.

The Court therefore finds that the Insurer Defendants' activity of sharing claim history, and Defendant RELX's activity of compiling that claim history for collective use, is sufficiently regulated by Colorado law.

### 3. The Challenged Activity Does Not Constitute a Boycott, Coercion, or Intimidation

Even when the "business of insurance" and state regulation requirements are met, the McCarran-Ferguson exemption is eviscerated if a plaintiff proves a "boycott, coercion, or intimidation." 15 U.S.C. § 1013(b); *Reazin v. Blue Cross & Blue Shield of Kan., Inc.*, 663 F. Supp. 1360, 1408 (D. Kan. 1987). In the Amended Complaint [#147], Plaintiffs assert that the Defendants' act of sharing and gathering claim loss data is done only to "intimidate consumers of insurance products to not file righteous property claims." *See Am. Compl.* [#147] at 13, ¶ 46. They argue that this "collective and collusive behavior is blatantly [and] artificially limiting the supply of home insurance products for unlucky homeowning consumers." *Id.* at 11, ¶ 37. In their response briefing, Plaintiffs further claim that "the actions of the illegal combination intimidated these Plaintiffs from using their paid-for insurance benefits." *Response* [#104] at 8. Plaintiffs therefore take the position that Defendants have engaged in an act or agreement to boycott, coerce, or intimidate

and thus do not receive the protection of the McCarran-Ferguson Act. However, Plaintiffs fail to sufficiently allege the existence of any boycott, coercion, or intimidation.

In simple terms, a boycott is the concerted refusal to deal in one transaction to coerce changes in the terms of a separate transaction. *Hartford Fire Ins. Co.*, 509 U.S. at 803. Thus, a boycott exists only when the refusal to deal is designed to obtain favorable terms in a transaction "collateral" to the transaction in which the refusal to deal occurs. *Id*. Upon a determination that an action does not constitute a boycott, but rather a concerted agreement to terms, a defendant's actions cannot constitute "coercion" or "intimidation." *Id.* at 808, n.6. Plaintiffs have not alleged any facts suggesting that any of the defendants' refusal to deal was done to obtain favorable terms in a collateral deal. As the Supreme Court stated in *Hartford Fire*, Defendants "are not engaging in a boycott, because: [t]hey are not coercing anyone, at least in the usual sense of that word; they are merely (though concertedly) saying 'we will deal with you only on the following trade terms.'" *Hartford Fire*, 509 U.S. at 802 (quoting L. Sullivan, LAW OF ANTITRUST 257 (1977)) (emphasis omitted).

To illustrate, the Supreme Court found a boycott in *St. Paul Fire & Marine Ins. Co. v. Barry*, where an insurance company induced its competitors to refuse to deal with its policyholders in an effort to induce those policyholders to accede to certain terms. 438 U.S. 531, 544 (1978). Conversely, in *Slagle v. ITT Hartford*, the Eleventh Circuit found a boycott did not exist where insurance companies refused to provide the plaintiff windstorm insurance because "the conditions of [the insurance companies'] refusal to deal relate directly to the terms of the purchase of windstorm insurance, the primary transaction, and not to some collateral transaction." 102 F.3d 494, 499 (11th Cir. 1996). Like the plaintiff

in *Slagle*, the Plaintiffs "simply fail[] to allege that [Defendants] are using unrelated transactions . . . as leverage to achieve the terms desired." *Id.* (quoting *Hartford*, 509 U.S. at 803).

Plaintiffs assert no facts which plausibly allege that Defendants' conduct amounts to a boycott, coercion, or intimidation. Further, the challenged conduct constitutes the business of insurance and is subject to state regulation. Finding that these requirements have been met, the Court finds that the McCarran-Ferguson Act exempts Plaintiffs' federal antitrust claims. The same holds true for Plaintiffs' Claim Three under the Colorado Antitrust Act. COLO. REV. STAT. § 6-4-109 ("Any person, activity, or conduct exempt or immune under the laws of this state or exempt or immune from the federal antitrust laws is exempt or immune from this article 4[.]"). As such, the Court **recommends** that Plaintiffs' antitrust claims, i.e., Claims One through Three, be **dismissed without prejudice**.

## D.    Plaintiffs' Remaining State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (applying provision to affirm district court's dismissal of the plaintiff's state law claims). Having recommended dismissal of Plaintiffs' claims arising under federal law, the Court **recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, i.e., Claims Four through Eight.

## IV.    Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendants' Motions [#91, #92, #95] be **GRANTED**, as outlined above.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 19, 2025                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge